UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11993-RGS

LUIS GIL

v.

VORTEX, LLC

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

March 25, 2010

STEARNS, D.J.

This action was brought by plaintiff Luis Gil against Vortex, LLC (Vortex), his former employer, alleging disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* (Count I), and its state analog, Mass. Gen. Laws ch. 151B, § 4 (Count II),  unlawful termination in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* (Count III), and unlawful retaliation for the filing of a workers' compensation claim, Mass. Gen. Laws ch. 152, § 75B (Count IV).  On December 30, 2009, Vortex moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  A hearing on the motion was held on March 8, 2010.

BACKGROUND

The facts in the light most favorable to Gil as the non-moving party are as follows. Vortex is a sheet metal fabrication company located in Peabody, Massachusetts.  Gil began working as a punch press operator at Vortex in 1992.  A punch press is a stamping machine that uses dies to cut and shape metal.  Most modern punch presses are operated by computer numerical control.  At all times relevant to the Complaint, Gil had monocular

vision, that is, he was blind in one eye.

### The Initial Injury

In March of 2007, Gil suffered a laceration while operating his punch press. The accident was not reported to Vortex's workers' compensation insurer. Later that year, Vortex questioned Gil's ability to continue to operate the punch press because of his restricted vision. Vortex told Gil to submit a doctor's note attesting to his ability to work safely. Vortex subsequently told Gil that instead of obtaining a doctor's note, he would be required to submit to an examination by a physician selected by Vortex. Although Gil agreed, the examination was never scheduled. Vortex also withdrew its request for a doctor's certification of Gil's ability to work as a punch press operator. Gil nevertheless obtained and submitted a doctor's note.

### The Second Injury and Its Aftermath

In the summer of 2008, Gil suffered a work-related hernia. This injury also was not reported to Vortex's insurer. In the fall of 2008, Gil's hernia symptoms worsened and he sought medical treatment. In October of 2008, he told his doctors that the injury was work-related. As a result, they sent their bill to Vortex's workers' compensation insurer.

Immediately thereafter, Gil was informed by Vortex that he was being terminated. As a reason, Gil was told that he had failed to submit the doctor's note regarding his vision restriction. When Gil protested that he had provided the note, Vortex stated that it was not satisfied with the note's contents. Gil then obtained a second, more fulsome note. After receiving the second note, Vortex rescinded Gil's termination. Vortex, however, transferred Gil to a less desirable position in the shipping department.

In November of 2008, Gil requested a six-week medical leave to undergo surgery

2

to correct his hernia.  Gil was scheduled to return to work on December 26, 2008, but because of the holidays, Vortex did not reopen until January 2, 2009.  When Gil reported for work on January 2, 2009, he was told that there was none available and that he should return a week later.  On January 9, 2009, Gil was again told that Vortex had nothing for him to do.  Gil returned later that day, accompanied by his adult daughter.  He spoke with his supervisor "who made it clear that Vortex was terminating Mr. Gil's employment, purportedly because it had no work for him."  Compl. ¶ 41.  Gil was instructed by the supervisor to file a claim for unemployment insurance benefits.  Gil's daughter contacted the supervisor a few days later on his behalf.  She was told that "the company was concerned that Mr. Gil might injure himself again and that there was 'no light duty' for him."  Id. ¶ 45.  Gil alleges that the "no work" explanation was a pretext to terminate him because of his disability.  Gil points to the fact that Vortex was hiring new workers even as he was being let go.

On May 8, 2009, Gil filed a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD).  He also cross-filed with the U.S. Equal Employment Opportunity Commission (EEOC).  Gil eventually received a Notice of Right to Sue from the EEOC.  On November 20, 2009, Gil withdrew the MCAD Complaint and filed this action in the federal district court.

DISCUSSION

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007) (disavowing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

3

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and quotations omitted). See also Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007). Dismissal for failure to state a claim will be appropriate if the pleadings fail to set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997), quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

Federal and State Disability Definitions

Both state and federal law define a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of the individual" or "being regarded as having such an impairment."[1]   Mass. Gen. Laws ch. 151B, § 1(17); 29 C.F.R. § 1630.2(g)(1)–(2).   There can be no dispute that Gil's monocular vision is a physical impairment.   See 29 C.F.R. § 1630.2(h)(1) (defining "physical impairment" as "[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: . . . special sense organs . . . ."). Nor can it be disputed that both the ability to see and the ability to work are major life activities.   42 U.S.C. § 12102(2)(A); Mass. Gen. Laws ch. 151B, § 1(20). The issue before the court is whether Gil's monocular vision "substantially limits" his ability to see and/or work.

The Amendments Act

As a threshold matter, the court must determine whether the more plaintiff-friendly

---

[1]A third means of proving a disability by showing a "recorded impairment" is not at issue.

4

disability standard of the ADA Amendments Act of 2008 (Amendments Act), Pub. L. No. 110-325, 122 Stat. 3553 (2008) (codified at 42 U.S.C. § 12101), applies to Gil's ADA claim. Although neither party addresses the Amendments Act in the briefs, mention of the legislation was made during oral argument – principally a statement by Vortex's counsel that the Amendments Act does not have retroactive effect.  See Carreras v. Sajo, García & Partners, 2010 WL 610134, at *4 n.7 (1st Cir. Feb. 23, 2010) ("Congress expressed no clear intent to make the statute retroactive.  We have recently suggested as much, see Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n.3 (1st Cir. 2009), and all circuits to consider the issue to date have so held.").  The Amendments Act took effect on January 1, 2009.  Pub. L. No. 110-325, § 8, 122 Stat. at 3559.  Gil alleges (without contradiction) that he was first turned away from work on January 2, 2009 – one day after the Amendments Act became law.  Because retroactivity is not at issue, the court will apply the revised disability standard of the Amendments Act.

Congress's stated motivation in drafting the Amendments Act was its displeasure with the Supreme Court's interpretation of certain aspects of the ADA, including its parsimonious treatment of the term "substantially limits" as it modifies the definition of "disability."  Congress took particular umbrage at Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), and Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002). Congress explicitly stated that "as a result of these Supreme Court cases, lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities."  Pub. L. No. 110-325, § 2(a)(6), 122 Stat. at 3553.  The Amendments Act makes clear that "it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered

5

under the ADA have complied with their obligations." Id. § 2(b)(5), 122 Stat. at 3554.

Congress also remarked that "whether an individual's impairment is a disability under the

ADA should not demand extensive analysis." Id. See also Statement of Managers to

Accompany ADA Amendments Act, 154 Cong. Rec. S8840, S8841 (daily ed., Sept. 16,

2008) ("It is our expectation that because the bill makes the definition of disability more

generous, some people who were not covered before will now be covered. . . . This bill

lowers the standard for determining whether an impairment constitute[s] a disability and

reaffirms the intent of Congress that the definition of disability in the ADA is to be

interpreted broadly and inclusively.").

The Amendments Act specifically rejects the holding of Toyota, 534 U.S. at 196-197,

"that the terms 'substantially' and 'major' in the definition of disability under the ADA 'need

to be interpreted strictly to create a demanding standard for qualifying as disabled.'" Pub.

L. No. 110-325, § 2(b)(4), 122 Stat. at 3554.  Similarly, Congress found that EEOC

regulation 29 C.F.R. § 1630.2(j)(1)(ii), defining "substantially limits" as "significantly

restricted" sets "too high a standard."[2] Pub. L. 110-325, § 2(a)(8), 122 Stat. at 3554.

---

[2]EEOC interpretive guidelines may be consulted in defining a disability. Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 21 (1st Cir. 2002). But see Toyota, 534 U.S. at 194 ("The persuasive authority of the EEOC regulations [interpreting the ADA] is less clear [than that of earlier regulations interpreting the Rehabilitation Act of 1973]."). The EEOC has published a proposed revised rule to conform with the Amendments Act. Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, 74 Fed. Reg. 48,431 (proposed Sept. 23, 2009) (to be codified at 29 C.F.R. pt. 1630). Under the proposed rule, 29 C.F.R. § 1630.1(c)(4) would state: "The definition of disability in this part shall be construed broadly, to the maximum extent permitted by the terms of the ADA." 74 Fed. Reg. at 48,439. The analysis for "substantially limits" in 29 C.F.R. § 1630.2(j) is heavily reworded in the proposed rule to account for this broader coverage by comparing the ability of an individual to perform a major life activity to "most people in the general population," deleting language objected to in the Amendments Act, and providing practical examples to illustrate impairments that may

As the court's analysis will show, Gil meets the revised ADA disability standard.  The

court is also confident that the Supreme Judicial Court (SJC) would apply the same revised

standard in interpreting the term disability for purposes of Chapter 151B.  See Dahill v.

Police Dep't of Boston, 434 Mass. 233 (2001) (declining to follow Sutton's ADA analysis

and adopting a more liberal disability standard for Chapter 151B).[3]

Counts I and II - Disability Discrimination

Counts I and II of the Complaint allege disability discrimination in violation of the

ADA and the virtually identical Massachusetts anti-discrimination in employment statute.

"Disability" is the term used by the ADA, while Chapter 151B uses the older term

"handicap."  Mass. Gen. Laws ch. 151B, § 1(17); 29 C.F.R. § 1630.2(g).  For reasons of

consistency, the court will use the term "disability."  To obtain relief on a claim of disability

discrimination under both federal and state law, a plaintiff must establish that "(1) he suffers

from a disability or handicap, as defined by the ADA and Chapter 151B, that (2) he was

_____

substantially limit a major life activity.  The revised 29 C.F.R. § 1630.2(j)(1) reads:  "An impairment is a disability within the meaning of this section if it 'substantially limits' the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered a disability." 74 Fed. Reg. at 48,440.  Of relevance to the facts in this case, the proposed revisions to 29 C.F.R. § 1630.2(j)(2)(ii)(B) give the following example: "Someone with monocular vision whose depth perception or field of vision would be substantially limited . . . need not also show that he is unable to perform activities of central importance to daily life that require seeing in order to be substantially limited in seeing."  74 Fed. Reg. at 48,440.

[3]While there have been occasional differences in approach, the SJC, in construing the state employment discrimination statute, has often looked to federal law for guidance. Even in Dahill, the SJC acknowledged that "[f]ederal precedents can be 'most helpful' in the resolution of cases involving G.L. c. 151B."  434 Mass. at 243, quoting Cox v. New England Tel. & Tel. Co., 414 Mass. 375, 384 (1993).  See also Tate v. Dep't of Mental Health, 419 Mass. 356, 361 (1995).

nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation, and that (3) [his employer] took an adverse employment action against him because of, in whole or in part, his protected disability." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005).  Vortex argues Gil has failed to sufficiently plead these three elements in his Complaint.

      a.    Disability

The Supreme Court has held that individuals (like Gil) who have monocular vision "'ordinarily' will meet the [ADA's] definition of disability . . . ." Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999) (internal citation omitted).  However, the Court has cautioned that the ADA's definition of disability "with respect to an individual," 42 U.S.C. § 12102(1), requires a determination on a "case-by-case basis" and that "monocular individuals, like others claiming the Act's protection, [need] to prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial." Id. at 566-567.

Vortex contends that "[t]he Complaint is completely devoid of any reference to Gil's 'substantial limitations' resulting from his monocular vision either with respect to living generally or working in particular.  These glaring omissions make the pleading insufficient as a matter of law to state a claim for disability discrimination."  Vortex Mem. at 5.  Gil responds that his complete blindness in one eye inhibits two major life activities, seeing and working, as defined by the ADA (42 U.S.C. § 12102(2)(A)), and Chapter 151B (§ 1(20)). Gil Opp'n at 9.  Although Gil might have done a better job of providing details in his Complaint describing the precise nature of his "substantial limitations," enough is pled to satisfy the relaxed disability standard of the Amendments Act.

Vortex also asserts that the Complaint fails to state an alternative claim for "regarded as" discrimination because there are insufficient facts pled to support the allegation that Vortex's expressed concerns about Gil's ability to safely operate a punch press were motivated by a discriminatory animus. Vortex Mem. at 5, citing Sutton, 527 U.S. at 490 ("[T]he allegation that respondent has a vision requirement in place does not establish a claim that respondent regards petitioners as substantially limited in the major life activity of working."). Gil's response is that Vortex showed its true colors when it "took adverse action against him out of its fear of Mr. Gil injuring himself due to his lack of vision in one eye." Gil Opp'n at 9, citing Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 16-17 (1998) ("regarded as" liability deals with the employer's perception and encompasses employees with temporary impairments).[4]

While Gil's claim might have failed the pre-Amendment Act test, at least under the ADA, Congress explicitly rejected the "regarded as" analysis set out in Sutton that Vortex relies on. As Congress explained:

> This section of the definition of disability was meant to express our understanding that unfounded concerns, mistaken beliefs, fears, myths, or prejudice about disabilities are often just as disabling as actual impairments, and our corresponding desire to prohibit discrimination founded on such perceptions. . . . We intend and believe that the fact that an individual was discriminated against because of a perceived or actual impairment is sufficient. . . . [C]ontrary to Sutton, an individual who is "regarded as having such an impairment" is not subject to a functional test. If an individual

---

[4]Gil also argues that his hernia was a disability within the meaning of the ADA and Chapter 151B. Gil Opp'n at 9-10. The subject of the hernia is not pled in the Complaint, nor did it figure in the administrative charge. The Complaint's disability discrimination claims are clearly limited to Gil's vision impairment. See Compl. ¶ 15 ("Mr. Gil's disability (blindness in his left eye) substantially limits one or more life activities."). Consequently, the hernia cannot be considered on the motion to dismiss. See Thornton, 587 F.3d at 31-32.

establishes that he or she was subjected to an action prohibited by the ADA because of actual or perceived impairment – whether the person actually has the impairment or whether the impairment constitutes a disability – then the individual will qualify for protection under the Act.

154 Cong. Rec. at S8842. Here, the facts viewed in the light most favorable to Gil establish a plausible allegation that Vortex believed him to be disabled, and terminated him as a result. Gil was asked by Vortex to provide two doctor's notes and to submit to an independent medical examination to verify his ability to work without incident in spite of his vision restriction. Vortex attempted to terminate his employment when it believed that Gil had been unable to obtain the requested note. Gil's daughter, moreover, was told by Gil's supervisor that he had been let go because of Vortex's fears that he would injure himself. Under the Amendments Act, Gil has also met his burden of pleading a claim of "regarded as" disability.

      b.    <u>Ability to Perform Job With or Without Accommodation</u>

Gil claims that in spite of his impaired vision, "he was at all times during his employment with Vortex, able to perform the essential functions of his job." Compl. ¶ 46. Vortex does not dispute this assertion, but argues that Gil's discrimination claims must fail because he never requested an accommodation for his impairment. <u>See</u> <u>Culhane v. Baystate Med. Ctr., Inc.</u>, 2007 WL 1630093, at *7 (Mass. App. Ct. June 6, 2007) (affirming dismissal of a claim at the summary judgment stage where "[t]he accommodations the plaintiff asserts should have been provided were . . . never requested or even suggested by the plaintiff"). <u>See</u> <u>also</u> <u>Otolo v. Middlesex Sheriff's Office</u>, 2007 WL 4248122, at *4 (Mass. Super. Nov. 14, 2007) (holding that a "person must request a reasonable accommodation before he has been terminated. He cannot wait until he is terminated and

then months later . . . request reinstatement and demand a reasonable accommodation."). Gil responds "that there is no need for [him] to plead a need for an accommodation for his partial blindness" because his is not a "failure to accommodate" claim, but rather one of disparate treatment.[5]   Gil Opp'n at 11, citing <u>Dartt</u>, 427 Mass. at 6.  The court agrees. Vortex misreads the second element of a disability claim.  Under this element, an employee must be able to perform the essential functions of a job, with *or without* reasonable accommodation.  Whether an employee has requested an accommodation is irrelevant when he makes no allegation that he required an accommodation to perform his job.

Vortex finally asserts a "direct threat" affirmative defense, arguing that its actions toward Gil are exempt from the discrimination laws because they were undertaken in the interest of worker safety.   A plaintiff alleging work place discrimination bears the burden of showing that he is a "qualified" individual.  <u>EEOC v. Amego, Inc.</u>, 110 F.3d 135, 144 (1st Cir. 1997).  To be a "qualified" individual, an employee must be able to fulfill, with or without a reasonable accommodation, all essential (as opposed to marginal) functions of the job. <u>Kvorjak v. Maine</u>, 259 F.3d 48, 55 (1st Cir. 2001).  An employer has the right to set a legitimate and non-discriminatory "qualification standard" by which it may judge the suitability of an employee (or potential employee) for a particular job.  "The term 'qualification standard' may include a requirement that an individual shall not pose a direct threat to the health or safety of the individual or others in the workplace."  29 C.F.R. § 1630.15(b)(2).  <u>See</u> <u>also</u> <u>Chevron U.S.A. Inc. v. Echazabal</u>, 536 U.S. 73, 86-87 (2002).

_____

[5]Gil also responds that the reasonable accommodation that he requested, and received, was the medical leave for his hernia surgery.  As the court has explained, Gil's hernia is not a fair subject of discussion in the context of a test of the sufficiency of his pleadings.

Vortex cites a factually similar case, Dyke v. O'Neal Steel, Inc., 327 F.3d 628 (7th Cir. 2003), where *summary judgment* was affirmed in a discrimination lawsuit brought by a temporary employee with monocular vision whose job responsibilities included operating a punch press.  In Dyke, the plaintiff was unable to refute expert testimony offered by the employer that "[w]orkers who do not meet [certain] vision standards are likely to have difficulty performing their jobs and are at a high risk of injuring themselves and their co-workers."  Id. at 634.  Gil argues that Dyke can be distinguished because the plaintiff in that case had been on the job for only twelve days, whereas Gil had successfully operated a punch press at Vortex for sixteen years.  Moreover, Gil – and this is the winning argument – makes the point that "whether Vortex was motivated by a benign desire to keep Mr. Gil safe, or improperly by discrimination or fear of future workers compensation benefits, is for the jury to decide."  Gil Opp'n at 12.  Vortex's affirmative defense, which is fact-laden, simply has no place in a motion to dismiss.  While Gil has the ultimate burden of showing that he was a "qualified" employee, Amego, 110 F.3d at 144, his burden at this stage of the pleadings is simply to make out a prima facie case that he is qualified, which he has done.

    c.    Adverse Employment Action

The ADA prohibits discrimination in job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a).  Although Vortex argues its actions were proper, it does not dispute that Gil's termination was an adverse employment action.  Thus, Gil has established the prima facie elements of both his state and federal discrimination claims.

Count III - FMLA (29 U.S.C. 2601, *et seq.*)

Gil claims that Vortex terminated him in retaliation for taking medical leave.  Vortex makes two arguments as to why Gil's FMLA claim should fail: (1) that the FMLA does not apply to small businesses such as Vortex; and (2) that there is no right under the FMLA to be restored to a position that no longer exists.

To be eligible for FMLA benefits, an employee must work for an employer that employs 50 or more workers within 75 miles of his or her worksite.  29 C.F.R. § 825.110(a)(3).  The Complaint alleges that "Vortex had more than 50 employees within a 75 mile radius of the plaintiff's worksite."  Compl. ¶ 56.  Vortex disputes this fact through an affidavit submitted by the Controller for Vortex who states that "[p]aragraph 56 [of the Complaint] is not correct in its assertion about the number of employees."  Coppola Aff. ¶ 3.  The Controller contends that "[a]t the time of the events of which Gil complains, and in particular when he was let go, Vortex did not have 50 or more employees."  Id. ¶ 4.  Vortex asserts that the current number of employees is 45, though it admits that it did employ 52 workers briefly in June of 2009.  Gil responds that Vortex did employ more than 50 workers at the relevant times based on personal knowledge gained from his sixteen years of employment at Vortex.  As should be self-evident, this factual dispute cannot be addressed on a Rule 12(b)(6) motion absent a conversion of the motion to dismiss under Fed. R. Civ. P. 12(d), which neither party has requested.

Alternatively, Vortex argues that there is no right under the FMLA to be restored to a position that has been eliminated.  The FMLA states that nothing in the statute "shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."  29 U.S.C. § 2614(a)(3)(B).  See also

13

Dressler v. Cmty. Serv. Commc'ns, Inc., 115 F. App'x 452, 453 (1st Cir. 2004) ("[T]he obligation to restore an employee who has taken leave is qualified; if a change in position would have occurred regardless of whether the employee took leave, the FMLA does not protect him against such change."). However, the implementing regulations place the burden on Vortex to prove that a layoff of an employee returning from FMLA leave is legitimate.

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. *An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.* For example: (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to . . . restore the employee cease[s] at the time the employee is laid off . . . . *An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.* Restoration to a job slated for lay-off when the employee's original position is not would not meet the requirements of an equivalent position.

29 C.F.R. § 825.216(a) (emphases added).

Again, the court finds that Vortex is attempting to raise an affirmative defense in an inappropriate context. See Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 963 (10th Cir. 2002); Parris v. Miami Herald Pub. Co., 216 F.3d 1298, 1301 n.1 (11th Cir. 2000); Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1018 (7th Cir. 2000). See also Jones v. Nationwide Credit, Inc., 2008 WL 1815537, at *2 (N.D. Ga. Apr. 21, 2008) ("This is an affirmative defense.").

### Count IV - Retaliation (Mass. Gen. Laws ch. 152, § 75B)

The Massachusetts Workers' Compensation Act states: "No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner

14

discriminate against an employee because the employee has exercised a right afforded by this chapter [Workers' Compensation] . . . ." Mass. Gen. Laws ch. 152, § 75B(2).  "Under the Workers' Compensation Act, [plaintiff] must demonstrate that (1) he engaged in an activity protected by the Workers' Compensation Act; (2) [the employer] was aware of the protected activity; (3) [the employer] thereafter engaged in an adverse employment action; and (4) but for this engagement in the protected activity, [the employer] would not have taken the adverse employment action against [the employee]."  Benoit v. Technical Mfg. Corp., 331 F.3d 166, 177 n.5 (1st Cir. 2003) (citation omitted).

Vortex challenges Gil's ability to meet the fourth element because he "has not alleged sufficient facts in his [C]omplaint to show that there was a causal connection between being laid off and engaging in any protected activity [under the Act]."  Vortex Mem. at 11.  Although Vortex concedes that the timing of Gil's layoff was in reasonably close proximity to the filing of the workers' compensation claim regarding the hernia injury, Vortex argues (correctly) that "chronological proximity, standing alone, does not establish causality where '[t]he larger picture undercuts any claim of causation.'"  Lukacinsky v. Panasonic Serv. Co., 2004 WL 2915347, at *26 (D. Mass. Nov. 29, 2004), quoting Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997).  Here, Vortex argues that there are no facts (other than timing) alleged from which an inference of a discriminatory animus could be drawn.  Gil's theory is that Vortex undertook to terminate him because his doctors submitted bills to Vortex's workers' compensation insurer for the treatment of his hernia in October of 2008.  Even assuming that this was protected activity, Gil fails by his own account to plead an adverse employment action, as he admits his termination in October of 2008 was rescinded.

15

ORDER

For the foregoing reasons, Vortex's motion to dismiss is <u>DENIED</u> as to Counts I, II, and III, and <u>ALLOWED</u> as to Count IV.  The parties will file a joint proposed discovery schedule within ten (10) days of the date of this Order.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE